991 A.2d 65

**MOTOR VEHICLE ADMINISTRATION**

v.

**John Edward DOVE.**

**No. 40, Sept. Term, 2009.**

Court of Appeals of Maryland.

March 17, 2010.

74

Dore J. Lebowitz, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., Baltimore), on brief, for petitioner.

Thomas Axley (Thomas Axley, Chartered, Prince Frederick), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

In this case, we are asked to consider whether the Administrative Law Judge ("ALJ") determined correctly that the respondent, John Edward Dove ("Dove"), should have his driver's license suspended for refusing a blood test to determine alcohol concentration while a hospital emergency room patient, at a time when Dove asserted that his refusal was justified because of his fear of needles, his preference for a breath test, and the later administration of an alcohol content test by hospital staff. We shall hold that the record provided substantial evidence in support of the ALJ's decision that Dove refused an alcohol concentration test, and that the ALJ properly suspended Dove's license pursuant to Md.Code (1977, 2009 Repl. Vol.), § 16–205.1(b) of the Transportation Article.

I.

At approximately 5:50 p.m., on March 3, 2008, Dove was involved in a motor vehicle collision. Dove was traveling

southbound on Route 4 in Calvert County on a motorcycle when he hit the rear of another vehicle that was slowing for a traffic light.

Officer Traas from the Calvert County Sheriff's Office responded to the scene, where he found Dove lying in the median receiving medical treatment. Officer Traas noticed Dove's red, watery eyes and a "strong odor" of alcohol emanating from his person. Upon questioning, Dove acknowledged that he had consumed one beer earlier in the day. Dove was subsequently transported to Calvert Memorial Hospital for medical treatment.[1]

At Calvert Memorial Hospital, Officer Traas read to Dove his rights granted by statute, as contained in the DR–15 Advice of Rights form ("DR–15"), and asked him to submit to a blood test to determine alcohol concentration based on the officer's suspicion that Dove was driving under the influence of alcohol. Dove indicated that he was not willing to submit to a blood test because he does not "do needles." He volunteered to take a breath test, which Officer Traas declined to administer. Dove also offered to refuse medical treatment and proceed to the police station, which Officer Traas rejected. Officer Traas asked Dove to sign the DR–15 form to acknowledge that he was advised of the consequences of refusal, which Dove signed. Dove asserted in his testimony that he was strapped to a backboard when he signed the form. Officer Traas confiscated Dove's driver's license and issued him a temporary license. After Officer Traas left the emergency room, hospital personnel administered a preliminary breath test ("PBT") to determine alcohol concentration as part of Dove's medical care, the result of which was 0.00. The medical staff provided routine medical care for Dove's injuries, including administering an intravenous morphine drip.

---

1. Dove testified that he "refused medical treatment on the scene and they did not want to let [him] go. They took [him] to the hospital strapped to a backboard." It is not clear from the record whether Dove thought better of his initial decision to refuse medical care, given his wrist fracture and possible head injury, or whether he was taken to Calvert Memorial against his will.

Dove requested a hearing on the pending 120–day mandatory license suspension for refusal to take an alcohol concentration test. After conducting an administrative hearing, the ALJ found that Officer Traas had reasonable grounds to believe that Dove was driving his vehicle while under the influence or impaired by the consumption of alcohol, based on the odor of alcohol on Dove's breath, his watery and red eyes, his dilated pupils, and his acknowledgment that he consumed one beer earlier in the day. The ALJ made the following factual findings: Officer Traas requested that Dove submit to an alcohol concentration test, which Dove refused. Officer Traas then fully advised Dove of the administrative sanctions to be imposed should he refuse an alcohol concentration test. Dove initially refused medical treatment at the scene, but was subsequently transported to a hospital. At the hospital, Dove refused to take a blood test to determine alcohol concentration after having been advised of his rights and of the consequences of refusal. Dove offered to take a breath test instead of a blood test, stating that he is afraid of needles, but refused the test as offered by Officer Traas. The ALJ determined that when an individual is not available to take a breath test at the police station, Maryland law requires that a blood test be offered. In this case, Officer Traas offered a blood test.

While Dove was at the hospital, staff administered a PBT. The breath test administered as part of hospital protocol was not an alcohol concentration test pursuant to § 16–205.1(a)(2) of the Transportation Article, which mandates that "[a]ny person who drives ... on a highway ... in this State is deemed to have consented ... to take a test" for alcohol concentration. Accordingly, the ALJ concluded that Dove refused an alcohol concentration test in violation of § 16–205.1(b) of the Transportation Article, which penalizes refusal of the test described in § 16–205.1(a)(2) of the Transportation Article, and suspended Dove's driving privilege for 120 days.

On judicial review, the Circuit Court for Calvert County reversed the ALJ's decision and held that it is improper to request a blood test rather than a breath test when a suspect states a preference for a breath test due to a fear of needles.

Also, the court opined that a blood test was not required pursuant to Md.Code (1973, 2006 Repl. Vol.), § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article because it was "debatable" whether Dove's injures "required" removal to a hospital, given that Dove was conscious, aware, and refusing medical treatment at the scene. Because this Court noted the Legislature's preference for breath tests rather than blood tests in *Hyle v. MVA*, 348 Md. 143, 156, 702 A.2d 760, 764 (1997), the Circuit Court strictly construed the exceptions warranting a blood test enumerated in § 10–305(a)(1) of the Courts and Judicial Proceedings Article. The Circuit Court also held that Dove did not make a knowing and voluntary refusal of the alcohol concentration test because he believed that signing an acknowledgment of refusal was a prerequisite to receiving medical treatment. Finally, the Circuit Court held that the ALJ erred in refusing to accept evidence of the preliminary breath test administered by the hospital staff.

This Court granted the State's petition for certiorari, pursuant to Md.Code (1973, 2006 Repl. Vol.), § 12–305(2) of the Courts and Judicial Proceedings Article,[2] to determine 1) whether an officer may rely on the judgment of medical personnel regarding a driver's removal to a hospital when evaluating whether a blood test for alcohol concentration is required pursuant to § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article; and 2) whether a driver's offer to consent to a method of alcohol concentration testing other than the method required by § 10–305(a) of the Courts and Judicial Proceedings Article, or the driver's consent to an alternative method of alcohol concentration testing for purposes of medical treatment, constitutes a refusal of an alcohol

---

2. Md.Code (1973, 2006 Repl. Vol.), § 12–305 of the Courts and Judicial Proceedings Article states that:

The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court ... has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that: ... (2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed.

concentration test as required by § 16–205.1(a)(2) of the Transportation Article.

## II.

Pursuant to the Maryland Administrative Procedure Act, Md.Code (1984, 2009 Repl. Vol.), § 10–201 *et seq.* of the State Government Article, "Maryland courts play a limited role when reviewing adjudicatory decisions of administrative agencies." *MVA v. Shepard,* 399 Md. 241, 251, 923 A.2d 100, 106 (2007). Md.Code (1984, 2009 Repl. Vol.), § 10–222(h) of the State Government Article governs the scope of judicial review of agency decisions:

*Decision.*—In a [judicial review] proceeding under this section,

the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

A reviewing court's role is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions.... In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Shepard,* 399 Md. at 252, 923 A.2d at 106 (quoting *Board of Physician v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380–81 (1999)); *see also MVA v. Weller,*

390 Md. 115, 141, 887 A.2d 1042, 1057 (2005); *MVA v. Atterbeary*, 368 Md. 480, 490–91, 796 A.2d 75, 81–82 (2002). "[A] court's task on review is *not* to 'substitute its judgment for the expertise of those persons who constitute the administrative agency'" when there is substantial evidence supporting the ALJ's decision. *Weller*, 390 Md. at 142, 887 A.2d at 1058 (quoting *Banks*, 354 Md. at 67–69, 729 A.2d at 380–81 (quoting *United Parcel v. People's Counsel*, 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994) (internal citations omitted) (emphasis in original))). The reviewing court "may set aside an agency's factual finding only when the finding is 'unsupported by competent, material, and substantial evidence in light of the entire record as submitted.'" *Shepard*, 399 Md. at 252, 923 A.2d at 106 (quoting *Spencer v. State Board of Pharmacy*, 380 Md. 515, 529, 846 A.2d 341, 349 (2004)).

■ This Court reviews the agency's decision, not the decision of the Circuit Court, applying the same statutory standards used by the Circuit Court. *Weller*, 390 Md. at 140, 887 A.2d at 1057; *Spencer*, 380 Md. 515, 524, 846 A.2d 341 (2004); *Atterbeary*, 368 Md. at 491, 796 A.2d at 81–82. The "agency's decision is prima facie correct and presumed valid," and viewed in the light most favorable to the agency. *Shepard*, 399 Md. at 252, 923 A.2d at 106 (quoting *Banks*, 354 Md. at 67–68, 729 A.2d at 380–81), *Aviation Administration v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005) (reaffirming the principle that the agency's decision is "'prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence" (quoting *Banks*, 354 Md. at 67–69, 729 A.2d at 380–81 (internal citations omitted))).

## III.

Section 16–205.1(a)(2) of the Transportation Article, sometimes called the "Implied Consent Statute," states that "[a]ny person who drives or attempts to drive a motor vehicle" on a Maryland roadway "is deemed to have consented" to an alcohol concentration test if a police officer reasonably sus-

pects that the driver is under the influence of alcohol or drugs.[3] Section 16–205.1 of the Transportation Article is read in pari materia with Md.Code (1973, 2006 Repl.Vol.), §§ 10–302 through 10–309 of the Courts and Judicial Proceedings Article,[4] which establish the parameters of alcohol concentra-

---

**3.** Md.Code (1977, 2009 Repl. Vol), § 16–205.1(a) of the Transportation Article states:

**Suspension or disqualification for refusal to submit to chemical tests for intoxication.**

(a) *Definitions; implied consent to chemical test.*—

(1)(i) In this section the following words have the meanings indicated....

(iv) "Test" means, unless the context requires otherwise:

1. A test of the person's breath or of 1 specimen of a person's blood to determine alcohol concentration;

2. A test or tests of 1 specimen of a person's blood to determine the drug or controlled dangerous substance content of the person's blood; or

3. Both....

(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

**4.** Md.Code (1973, 2006 Repl. Vol.), §§ 10–302 through 10–309 of the Courts and Judicial Proceedings Article, establish the protocols that police officers must follow when obtaining a test of a driver's "breath or blood ... for the purpose of determining alcohol concentration" or "drug or controlled dangerous substance content of the person's blood." § 10–302 of the Courts and Judicial Proceedings Article. "A specimen of breath or 1 specimen of blood may be taken for the purpose of a test for determining alcohol concentration ... within 2 hours after the person is apprehended." § 10–303(a) of the Courts and Judicial Proceedings Article. The person administering the test must be a "qualified medical person" or a "qualified person" as defined by §§ 10–304(a)(2) and (3) of the Courts and Judicial Proceedings Article, and the test must be administered using "equipment approved by the toxicologist under the Postmortem Examiners Commission" at the request of a police officer. §§ 10–304(b) and (c) of the Courts and Judicial Proceedings Article. If the officer and the personnel who

tion testing. *Lowry v. State,* 363 Md. 357, 368–69, 768 A.2d 688, 694 (2001). The alcohol concentration test shall be a breath test, unless a blood test is required pursuant to § 10–305(a)(1) of the Courts and Judicial Proceedings Article. Section 10–305(a)(1) states:

**Chemical test for alcohol, drug or controlled dangerous substance content—Type of test administered.**

(a) *Alcohol content.*—The type of test administered to the defendant to determine alcohol concentration shall be the test of breath except that the type of test administered shall be:

(1) A test of blood if:

(i) The defendant is unconscious or otherwise incapable of refusing to take a test to determine alcohol concentration;

(ii) Injuries to the defendant require removal of the defendant to a medical facility;

(iii) The equipment for administering the test of breath is not available; or

(iv) The defendant is required to submit to a test of one specimen of blood under 16–205.1(c)(1)(ii) of the Transportation Article; or

(2) Both a test of the person's breath and a test of one specimen of the person's blood if the defendant is required to submit to both a test of the person's breath and a test of one specimen of the person's blood under § 16–205.1(c)(1)(iii) of the Transportation Article . . . .

Section 10–305(a) of the Courts and Judicial Proceedings Article demonstrates the General Assembly's clear preference for a breath test, unless an enumerated exception applies, which justifies the invasiveness of a blood test. *Hyle,* 348 Md.

---

perform the test follow the statutory protocols, the results of the test are "admissible as substantive evidence without the presence or testimony of the technician or analyst who performed the test," § 10–306(a)(1) of the Courts and Judicial Proceedings Article, and the state is entitled to presumptions about intoxication pursuant to § 10–307 of the Courts and Judicial Proceedings Article.

at 153, 702 A.2d at 764. The blood test must be administered by "a qualified medical person using equipment approved by the toxicologist under the Postmortem Examiners Commission acting at the request of a police officer," Md.Code (1973, 2006 Repl. Vol.), § 10–304(c)(1)(i) of the Courts and Judicial Proceedings Article, and "shall be taken within 2 hours after the person accused is apprehended," Md.Code (1973, 2006 Repl. Vol.), § 10–303(a)(2) of the State Government Article.

■ Although § 16–205.1(a)(2) of the Transportation Article mandates that drivers on Maryland roads consent to an alcohol concentration test by default, § 16–205.1(b) of the Transportation Article grants drivers the right to refuse the test. Refusing an alcohol concentration test, however, is not without consequences. Section 16–205.1(b) enumerates the consequences of refusal:

(b) *No compulsion to take chemical test; consequences of refusal.*—

(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) In the case of a person licensed under this title:

. . .

3. For a test refusal:

A. For a first offense, suspend the driver's license for 120 days; or

B. For a second or subsequent offense, suspend the driver's license for 1 year. . . .

As the statute indicates, the officer must advise the driver of consequences of refusing the alcohol concentration test, thus affording the driver the opportunity to make an informed choice. *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 206, 630 A.2d 753, 762 (1993).

To assist police officers in providing the required notice of the administrative penalty for refusal of an alcohol concentration test, "[t]he MVA has developed an Advice of Rights form, the DR–15, which accurately and adequately conveys to the driver the rights granted by the statute." *Forman*, 332 Md. at 218, 630 A.2d at 762. The officer presents the DR–15 Advice of Rights form to the driver to explain the administrative procedures and consequences of refusal. The officer then asks the driver to sign the form so that the driver's "consent or refusal to submit to the [alcohol concentration test is] ... reduced to writing for the purpose of providing evidentiary proof." *Atterbeary*, 368 Md. at 498, 796 A.2d at 86. The signed statement is "strong evidence of the drunk driving suspect's willingness or unwillingness to submit to the test." *Id.*

Although a signed DR–15 is evidence of a driver's refusal to submit to an alcohol concentration test, the ALJ or court may find that the driver refused a test even if the driver also refused to sign the DR–15 form. "A test for alcohol concentration is refused when the driver, after having been advised pursuant to section 16-205.1(b), declines the officer's request to submit to the test." *Motor Vehicle Admin. v. Vermeersch*, 331 Md. 188, 193, 626 A.2d 972, 975 (1993). "A refusal of [an alcohol concentration test] 'is complete at the moment it is communicated to the officer.' " *Atterbeary*, 368 Md. at 497, 796 A.2d at 85 (quoting *Motor Vehicle Admin. v. Gaddy*, 335 Md. 342, 348, 643 A.2d 442, 445 (1994)); *see also Vermeersch*, 331 Md. at 193, 626 A.2d at 975. Refusal must be voluntary and with knowledge of the rights contained in the DR–15 form. *See Forman*, 332 Md. at 218, 630 A.2d at 762–63.

The facts of the present case raise three issues: 1) whether the circumstances, particularly Dove's removal to the hospital for medical treatment, warranted a blood test rather than a breath test pursuant to § 10–305 of the Courts and Judicial Proceedings Article; 2) whether Dove refused the alcohol concentration test, when he offered to take a breath test

instead of a blood test; and 3) if Dove refused the alcohol concentration test, whether the breath test performed by hospital personnel negated Dove's refusal.

The Motor Vehicle Administration ("MVA") argues that, pursuant to this Court's opinion in *Hyle*, 348 Md. 143, 702 A.2d at 764–65, the driver does not have the option to choose the method of alcohol concentration testing. Rather, in the MVA's view, the test must be administered in the method proscribed by § 10–305 of the Courts and Judicial Proceedings Article. In this case, Deputy Traas arrived on the scene after medical personnel determined that Dove's injuries required removal to a hospital for treatment. According to the MVA, when he detected evidence of alcohol, Deputy Traas properly requested a blood test to determine blood alcohol concentration under § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article. The MVA argues that the Circuit Court erroneously concluded that § 10–305(a) of the Courts and Judicial Proceedings Article did not apply in hindsight, infringing on the ALJ's role in determining whether the facts of the case met the requirements of the statute. The MVA further contends that the ALJ correctly ignored the PBT performed by hospital personnel because the test was performed for purposes of providing medical treatment and does not constitute a withdrawal of refusal under § 16–205.1(g) of the Transportation Article. The MVA points out that the PBT performed by the hospital did not meet the requirements outlined in §§ 10–302 through 10–309 of the Courts and Judicial Proceedings Article because the sampling equipment was not approved by the State Toxicologist and the test was performed outside of the required two hour time limit. Thus, according to the MVA, Dove refused the alcohol concentration test required by § 16–205.1(a)(2) of the Transportation Article and § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article, and substantial evidence in the record supported the sanction imposed by the ALJ.

Dove counters, arguing that he did not refuse an alcohol concentration test because he indicated to Officer Traas that he was willing to consent to a breath test. In Dove's opinion,

his circumstances did not warrant a blood test under § 10–305(a) of the Courts and Judicial Proceedings Article because his injuries did not "require" removal to the hospital. Dove defines "required" medical treatment as "[n]ot, simply, was the motorist injured such that medical treatment was appropriate, advisable or standard," but rather "that the injuries mandate removal to a hospital" because the injuries require immediate urgent medical care. In this case, according to Dove, medical personnel should have given him a Refusal of Care form, released him to law enforcement, and allowed Officer Traas to take him to the Sheriff's station or the Maryland State Police Barracks for a breath test. Dove also argues that his alleged fear of needles warranted his refusal, relying on the Supreme Court's decision in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Even if a blood test was required, Dove argues that he did not knowingly and voluntarily refuse the blood test because he was under duress and subjectively believed that he would not be released from the backboard until he signed the DR–15 form. Finally, Dove argues that even if he refused the alcohol concentration test, the PBT administered by Calvert Memorial Hospital negated his refusal, even though "the Calvert Memorial Hospital breathalyzer test for alcohol concentration was probably not performed by a person qualified nor performed on approved equipment." Further, Dove asserts that the PBT result, showing a reading of 0.00, should have been admitted for the purpose of "determining if probable cause did exist."

 In the present case, there is substantial evidence in the record to support the ALJ's finding that Dove's circumstances warranted a blood test for alcohol concentration pursuant to § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article because Dove's injuries required his removal to a medical facility. Medical personnel who responded to the scene of the collision determined that Dove's injuries, including a displaced wrist fracture and a possible head injury, required his removal to Calvert Memorial Hospital. The independent judgment of trained medical professionals about the need for medical care, made at the time of the motor

vehicle collision with the available information, is substantial evidence to support a finding that removal for medical care was required. We decline the invitation to review the medical judgments of trained medical personnel "in hindsight." Even if we were to take into account that Dove ultimately had not sustained a head injury, the emergency room physician noted on Dove's medical chart that he or she, upon discharging Dove, "[e]mphasized [the] *necessity* of [followup care], [because of the] possible loss of hand [function] or perm[anent] deformity if he doesn't." (Emphasis in original.) Clearly, an injury that, if left untreated, could lead to a permanent loss of function or deformity is of the type that requires urgent medical care. Further, Dove acknowledged in his testimony that, after the collision, he had a "knot ... on [his] head [sustained] when [his] head hit the street at 60 miles per hour." If trained medical personnel determine that the contact of one's head with the pavement at 60 miles per hour warrants immediate transport to a hospital, this determination appears reasonable, considering the need to evaluate and treat the patient's medical condition.

Because Dove's injuries required removal to Calvert Memorial Hospital, Officer Traas properly offered a blood test to determine alcohol concentration pursuant to § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article, which states that "the type of test administered to the defendant to determine alcohol concentration *shall* be ... [a] test of blood if ... [i]njuries to the defendant require removal of the defendant to a medical facility." (Emphasis added). "[T]he use of the word 'shall' in this statute imposes a mandatory duty upon police officers. As we have stated repeatedly: 'Under settled principles of statutory construction, the word 'shall' is ordinarily presumed to have a mandatory meaning.'" *State v. Werkheiser*, 299 Md. 529, 533, 474 A.2d 898, 900 (1984) (internal citations omitted) (interpreting whether § 10–305 required that an officer direct medical personnel to draw blood while a driver was unconscious and unable to refuse consent). Thus, because the Legislature established the circumstances under which the officer "shall" offer a blood test pursuant to

§ 10–305(a) of the Courts and Judicial Proceedings Article, neither the officer nor the driver has the discretion to choose whether the alcohol concentration test may be a breath test or a blood test. Rather, the Legislature exercised its discretion and determined that a blood test would be the appropriate test.

As we discussed in *Hyle,* 348 Md. at 151–52, 702 A.2d at 764, the legislative history of § 10–305 supports our interpretation. We stated in *Hyle:*

> Prior to a 1983 amendment, § 10–305 permitted the defendant to choose whether to take a blood test or a breath test. Chapter 289 of the Acts of 1983. Concern arose regarding the increasing number of defendants choosing blood tests over breath tests because of: (1) the difficulty of accomplishing the blood test in certain situations; (2) the delay in processing caused by administering blood tests instead of breath tests; and (3) the problems caused by the necessity to have medical personnel attend hearings where a blood test was used.... When 10–305 was being amended, it originally called for the police officer to select the type of test. Ch. 238 of the Acts of 1983.... This version, however, did not pass. In fact, "[t]he bill failed 28–17 after a number of senators complained that it would give too much discretion to law enforcement officers and harm motorists' rights." The version that ultimately passed eliminated officer discretion with respect to the type of test to be administered, and instead *statutorily determined which type of test would be administered.*

*Id.* (quoting Tom Linthicum, *Bill to tighten intoxication tests given new life,* BALTIMORE SUN, March 16, 1983, at F 14) (emphasis added). Dove notes correctly that the Legislature stated a general preference for breath tests in § 10–305(a) of the Courts and Judicial Proceedings Article, absent the special circumstances stated in § 10–305(a)(1). The Legislature's general preference for breath tests, however, does not override the plain language of the statute, mandating a blood test when the driver's injuries require removal to a hospital. Clearly, the Legislature expressed a specific preference for

blood tests where the driver was unconscious, unable to refuse the test, or removed to a medical facility because of injury, or where the equipment for administering a breath test is unavailable.

The record also contains substantial evidence supporting the ALJ's conclusion that Dove knowingly and voluntarily refused the alcohol concentration test as offered by Officer Traas. The strongest evidence supporting a knowing, voluntary refusal is Dove's own testimony. In his testimony, Dove acknowledges that Officer Traas asked him to take a blood test, that he refused, and that Officer Traas advised him of his rights.

Administrative Law Judge Zell ("ALJ"): All right. Well the officer's report indicates that he read you the advice of rights. Is that correct?

Defendant Dove ("Dove"): The advice of rights, meaning . . . ?

ALJ: Your rights . . .

Dove: . . . what's on that paper that states I'm refusing?

ALJ: Well that would be the [DR–15] advice of rights form.

Dove: Yeah, he did read it to me.

ALJ: He explained to you what the sanctions were for refusing an alcohol test?

Dove: Yes.

ALJ: Okay. He requested you take the test?

Dove: He requested that he stick me with a needle, yes.

ALJ: So he requested that you [take] the test. Did you agree to the test at the hospital which would have been a blood test?

Dove: No.

Dove acknowledged that Officer Traas read to him from the DR–15 Advice of Rights form, providing substantial evidence that Officer Traas advised him of the administrative penalties of refusing an alcohol concentration test, as required by § 16–205.1(b) of the Transportation Article. Dove also acknowledged that he refused a blood test to determine alcohol

concentration, offered by Officer Traas as required by § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article. Dove's offer to submit to a breath test fails to mitigate his refusal to take a blood test as required by § 10–305(a)(1)(ii) because, as discussed *supra*, the only alcohol concentration testing option available to him under § 10–305(a) of the Courts and Judicial Proceedings Article was a blood test.

Dove's assertion that his refusal was not voluntary because he felt compelled to sign the DR–15 form is not persuasive. As discussed *supra*, a refusal to submit to an alcohol concentration test is complete when it is communicated to the officer, regardless of whether the driver signed the DR–15 form. In the present case, Dove's refusal to submit to the alcohol concentration test was complete the moment he communicated it to Officer Traas. Even if Dove were persuaded to sign the DR–15 form because he was on the backboard, Dove clearly testified that the fact that he was strapped to the backboard had no effect on his decision to refuse the blood test for alcohol concentration.

> Dove: I get to the hospital. He [Officer Traas] comes in, he says, "Mr. Dove, I need to do an alcohol test on you." I said not a problem. Get the breathalyzer; I'll be more than happy to take one. "No, Sir. We're going to do it by needle." *I said, "No. We're not doing it by needle because I don't do needles."*

(Emphasis added). Dove testified that he offered to submit to various other tests, including a horizontal nystagmus test ("the eye tests") or a breath test. At no point, however, did he agree to a blood test. Even if the signed DR–15 were excluded from the record, Dove's own testimony provides substantial evidence that Dove made a knowing and voluntary refusal to submit to a blood test to measure alcohol concentration.

Additionally, Officer Traas did not restrain Dove or strap him to the backboard. Dove was placed on the backboard as part of his medical care. Dove testified that he was "[taken] to the hospital strapped to the backboard" by the paramedics.

The emergency room records reflect that when upon his admission to Calvert Memorial Hospital, Dove's room assignment was the "hallway outside Room 2." Thus, we surmise that Dove's location in the hallway on the backboard was the result of the decisions of his medical providers, not the will of Officer Traas. Further, pursuant to § 10–303(a)(2) of the Courts and Judicial Proceedings Article, Officer Traas had a duty to approach Dove and request that he submit to the required alcohol concentration test within two hours of Dove's apprehension. Under the circumstances, the ALJ had substantial evidence to reasonably conclude that Dove was not improperly coerced by the constraints imposed by his medical providers.

Dove's fear of needles does not excuse his knowing, voluntary refusal of the alcohol concentration test offered to him. Dove's reliance on *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, is unconvincing. In *Schmerber*, the Supreme Court of the United States considered the admissibility of a blood sample that was taken despite the defendant's refusal, on the advice of counsel, to consent to the test. *Schmerber*, 384 U.S. at 759, 86 S.Ct. at 1829, 16 L.Ed.2d at 913. The Court held that the blood sample, taken despite the defendant's express refusal, was not taken in violation of the defendant's Fourth and Fourteenth Amendment right to be free of unreasonable searches. 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. The Court noted in dicta that the fear of needles might be a legitimate reason for refusing an involuntary blood test that "would have to be respected." 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.

*Schmerber* is distinguishable from the present case because in *Schmerber*, the blood sample used to measure alcohol concentration was taken over the suspect's express objection. The Court speculated that a blood sample taken by force over an express objection might be an unreasonable intrusion into the suspect's person if the suspect were afraid of needles. Unlike in *Schmerber*, in the present case, Dove had the

express statutory right to refuse the blood test, as enumerated in § 16–205.1(b)(1) of the Transportation Article. The blood test was not performed over Dove's objection. Rather, Officer Traas presented Dove with a choice: submit to the blood test as required by § 16–205.1(a)(2) of the Transportation Article and § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article, or face the administrative penalty mandated by § 16–205.1(b) of the Transportation Article. Dove was informed of the consequences of refusal and free to decide whether his fear of needles outweighed his desire to maintain his driving privilege in the state of Maryland.

In the present case, the ALJ had before him for consideration Dove's testimony that he was afraid of needles, and Dove's medical records relating to his treatment at Calvert Memorial Hospital. Dove's medical records revealed that he was administered pain medication by a intravenous morphine drip. The admission of Dove's medical records into evidence was substantial evidence from which the ALJ could have reasonably inferred that Dove's fear of needles was relative.

■■■ Finally, the ALJ correctly determined that the breath test administered by Calvert Memorial Hospital staff did not nullify Dove's refusal of the alcohol concentration test. Section 16–205.1(g) of the Transportation Article permits withdrawal of a driver's refusal to take a blood alcohol concentration test if the withdrawal is unequivocal and made in a timely fashion.[5] In this case, Dove's expression of consent to an

---

**5.** Md.Code (1977, 2009 Repl. Vol.), § 16–205.1(g) of the Transportation Article permits withdrawal of a refusal to submit to an alcohol concentration test, and states the factors the ALJ shall consider when determining whether the refusal was withdrawn. Section 16–205.1(g) states:

(g) *Withdrawal of initial refusal to take test; subsequent consent.—*

(1) An initial refusal to take a test that is withdrawn as provided in this subsection is not a refusal to take a test.

(2) A person who initially refuses to take a test may withdraw the initial refusal and subsequently consent to take the test if the subsequent consent:

(i) *Is unequivocal;*

(ii) Does not substantially interfere with the timely and efficacious administration of the test; and

alcohol concentration breath test administered by hospital staff for purposes of medical treatment was not an unequivocal withdrawal of the refusal communicated to Officer Traas. Dove consented to a PBT by hospital staff, not a blood test as requested by Officer Traas pursuant to § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article. As discussed *supra*, § 10–305(a)(1)(ii) mandated a blood test in this case, not a breath test. Dove's consent to an alternative method of testing fails to satisfy the requirements of § 16–205.1(a)(2) of the Transportation Article and § 10–305(a)(1)(ii) of the Courts and Judicial Proceedings Article because the statute does not grant the driver discretion to choose the method of testing.

Additionally, the PBT performed by staff at Calvert Memorial Hospital did not meet the procedural requirements of § 10–304 of the Courts and Judicial Proceedings Article. Pursuant to § 10–304(b)(1) of the Courts and Judicial Pro-

---

(iii) is given by the person:

1. Before the delay in testing would materially affect the outcome of the test; and

2.A. For the purpose of a test for determining alcohol concentration, within 2 hours of the person's apprehension . . .

(3) In determining whether a person has withdrawn an initial refusal for the purposes of paragraph (1) of this subsection, among the factors that he Administration shall consider are the following:

(i) Whether the test would have been administered properly:

1. For the purpose of a test for determining alcohol concentration, within 2 hours of the person's apprehension . . .

(ii) *Whether a qualified person, as defined in 10–304 of the Courts Article, to administer the test and testing equipment were readily available;*

(iii) Whether the delay in testing would have interfered with the administration of a test to another person;

(iv) Whether the delay in testing would have interfered with the attention to other duties of the arresting officer or qualified person, as defined in § 10–304 of the Courts Article;

(v) Whether the person's subsequent consent to take the test was made in good faith; and

(vi) *Whether the consent after the initial refusal was while the person was still in police custody.*

(4) In determining whether a person has withdrawn an initial refusal for the purposes of paragraph (1) of this subsection, *the burden of proof rests with the person to establish by a preponderance of the evidence the requirements of paragraph (2) of this subsection.* (Emphasis added).

ceedings Article, even if a breath test were appropriate in this case, the person administering the test must be "a qualified person [using] equipment approved by the toxicologist under the Postmortem Examiners Commission." *Id., see also Vermeersch*, 331 Md. at 192, 626 A.2d at 974. Dove admitted in his brief that neither the person conducting the test nor the equipment used to administer the test met the requirements of § 10–304(b)(1) of the Courts and Judicial Proceedings Article. Further, pursuant to § 10–304(b)(1), the breath test must also be performed "at the request of a police officer," not by the hospital staff for purposes of medical treatment. Section 16–205.1(a)(2) of the Transportation Article states that the driver consents to an alcohol concentration test "subject to the provisions of §§ 10–302 through 10–309 of the Judicial Proceedings Article."

As this Court noted in *Vermeersch*, 331 Md. at 193, 626 A.2d at 975, a driver may not refuse the alcohol concentration test requested by the officer, then obtain an independent test that fails to meet the requirements of §§ 10–304 and 10–305 of the Courts and Judicial Proceedings Article and argue that his refusal is vitiated by "substantial compliance." In this case, even assuming *arguendo* that the hospital performed a test within two hours of Dove's apprehension, the breath test performed by Calvert Memorial Hospital did not comply with the statutory requirements of §§ 10–304 and 10–305. The test was performed for the purpose of providing medical care and not at the request of Officer Traas, the test was not performed using equipment approved by the Postmortem Examiner's Commission, and the test was not a blood test. Accordingly, Dove did not withdraw his refusal to consent to an alcohol concentration test pursuant to § 16–205.1 of the Transportation Article when he consented to a breath test at Calvert Memorial.

The fact that the preliminary breath test performed at Calvert Memorial Hospital showed a reading of 0.00 is irrelevant to the analysis of whether Dove refused the required blood test. The purpose of the sanction for refusal is

not to punish driving under the influence directly, but rather "to provide an incentive for drivers detained under suspicion of drunk driving to take, rather than refuse, a test for alcohol concentration." *Vermeersch*, 331 Md. at 194, 626 A.2d at 975; *see also Shepard*, 399 Md. at 255, 923 A.2d at 108 ("The purpose of the statute was to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests."); *Forman*, 332 Md. at 206, 630 A.2d at 756 (holding that the statute is a "strict penalty . . . designed to encourage licensees to take, rather than to refuse, such alcohol tests"). Dove argues that the preliminary breath test result, 0.00, should have been applied to a "probable cause" analysis. Dove, however, ignores the fact that a probable cause analysis has no place in this case. Section 16–205.1(a)(2) of the Transportation Article does not require probable cause when an officer requests an alcohol concentration test, but rather permits a test "if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol." Suspicion based on reasonable grounds is a lower standard than a preponderance of the evidence or probable cause. *Shepard*, 399 Md. at 254, 923 A.2d at 107. In this case, the record provided the ALJ with substantial evidence that Officer Traas had reasonable suspicion that Dove was driving his vehicle while under the influence of alcohol, based on the odor of alcohol detected on Dove's person at the scene, his watery eyes, and his involvement in a motor vehicle collision.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY IS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE. RESPONDENT TO PAY THE COSTS.**