Motor Vehicle Administration v. James R. Nelson, No. 26, September Term, 2018

**MD. CODE ANN., TRANSP. (1977, 2012 REPL. VOL., 2018 SUPP.) § 16-205.1 – IMPLIED CONSENT, ADMINISTRATIVE PER SE LAW – MD. CODE ANN., CTS. & JUD. PROC. (1974, 2013 REPL. VOL.) § 10-305(a) – ALCOHOL CONCENTRATION TESTS –** Court of Appeals held that, under Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2018 Supp.) § 16-205.1, which states that "officer shall . . . [r]equest that [] person permit [] test to be taken[,]" officer is simply required to request that driver take alcohol concentration test; in other words, officer is not required to specifically request that driver take blood test or breath test.

Circuit Court for Prince George's County
Case No. CAL17-23574

Argued: November 5, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 26

September Term, 2018

_____

MOTOR VEHICLE ADMINISTRATION

v.

JAMES R. NELSON

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D.,
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 13, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2018 Supp.) ("TR") § 16-205.1 is "commonly known as the implied consent, administrative per se law, [and] provides [] for the automatic suspension of the licenses of drivers who refuse to submit to testing for alcohol and drugs." Motor Vehicle Admin. v. Seenath, 448 Md. 145, 149, 136 A.3d 885, 887 (2016) (cleaned up). TR § 16-205.1(a)(2) provides for "implied consent" to take an alcohol concentration test, stating:

> Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented . . . to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of [TR] § 16-813 [(Driving Commercial Motor Vehicle with Alcohol Concentration in Blood or Breath Prohibited)].

Despite TR § 16-205.1(a)(2)'s recognition of a driver's implied consent to take a test, the driver may refuse to take a test unless the driver has been in an accident that results in the death of, or a life-threatening injury to, another person. See TR § 16-205.1(b)(1), (c)(1). That said, a driver's refusal to take a test will result in consequences. For example, the first time that a driver refuses to take a test, the driver's license will be suspended for 270 days. See TR § 16-205.1(f)(8)(v)5A. TR § 16-205.1 is called the "administrative per se law" because the possible administrative sanctions—e.g., suspension of a driver's license—automatically result from a driver's refusal to take, or a driver's failure of, a test.

Here, we must decide whether an officer is required to specify the type of test—i.e., a breath test or a blood test—when the officer requests that a driver take an alcohol

concentration test.

James R. Nelson, Respondent, crashed a vehicle that he had been driving. Corporal Brandon Foor of the St. Mary's County Sheriff's Office approached the vehicle. Nelson—who was conscious, but unable to move—said that he was drunk. Corporal Foor smelled a strong odor of alcohol on Nelson's breath. Corporal Foor requested that Nelson take an alcohol concentration test and Nelson refused. On behalf of the Motor Vehicle Administration ("the MVA"), Petitioner, Corporal Foor confiscated Nelson's commercial driver's license.

Nelson requested an administrative hearing, at which his counsel moved that an administrative law judge ("the ALJ") take no action against Nelson. The ALJ denied the motion to take no action, and determined that Nelson had violated TR § 16-205.1. The ALJ ordered that Nelson's commercial driver's license be disqualified for 12 months, and that, instead of having his driver's license suspended for 270 days, Nelson would participate in the Ignition Interlock System Program. Nelson petitioned for judicial review. The Circuit Court for Prince George's County reversed the ALJ's decision, reasoning that Corporal Foor was required to specifically request that Nelson take a blood test.

Before us, the MVA contends that the circuit court erred. The MVA argues that TR § 16-205.1 simply requires an officer to ask a detained driver to take an alcohol concentration test, but does not require the officer to advise the driver whether the alcohol concentration test will be a breath test or a blood test. Nelson responds that Corporal Foor was required to specifically identify the type of alcohol concentration test that he was being asked to take.

- 2 -

We hold that, under TR § 16-205.1(b)(2)(ii)'s plain language, an officer is simply required to request that a driver take an alcohol concentration test; in other words, an officer is not required to specifically advise the driver whether the alcohol concentration test will be a blood test or a breath test. TR § 16-205.1(b)(2)(ii) unequivocally states that an "officer shall . . . [r]equest that the person permit **a test** to be taken[.]" (Emphasis added). In turn, TR § 16-205.1(a)(1)(iii) defines the word "test" as a blood test, a breath test, or both. Simply put, nothing in TR § 16-205.1 requires an officer to specify the type of alcohol concentration test when requesting such a test be taken.

## BACKGROUND

### Officer's Certification and Order of Suspension and Advice of Rights Form

In an "Officer's Certification and Order of Suspension" dated November 6, 2016, Corporal Foor stated as follows. At 1:46 a.m., in St. Mary's County, Corporal Foor saw a vehicle that had "crashed off the roadway." Nelson was in the driver's seat, and said that he was drunk. Corporal Foor smelled a strong odor of alcohol on Nelson's breath. Nelson "was unable to satisfactorily complete" the Standardized Field Sobriety Test.

Corporal Foor signed an "Advice of Rights" form, which was labeled DR-015 and dated October 2016, and stated in pertinent part:

> You have been stopped or detained[,] and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under [TR] §[ ]16-205.1. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

- 3 -

**Suspension of Your Maryland Driver's License or Driving Privilege:**
If you refuse to submit to the test, or if you submit to the test and the result indicates an alcohol concentration of 0.08 or more at the time of testing, your Maryland driver's license shall be confiscated, you will be issued an Order of Suspension and, if eligible, a temporary license [that will be] valid for 45 days. The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:

**If you refuse to submit to a test, your suspension shall be 270 days for a 1st offense and 2 years for a 2nd or subsequent offense.**

**If your test result is an alcohol concentration of at least 0.08 but less than 0.15, your suspension shall be 180 days. If the offense involves a motor vehicle accident that resulted in the death of another person, your suspension shall be 6 months for a 1st offense and 1 year for a 2nd or subsequent offense.**

**If your test result is an alcohol concentration of 0.08 but less than 0.15, your suspension may be modified or a restricted license may be issued at a hearing.**

**If your test result is an alcohol concentration of 0.15 or more, your suspension shall be 180 days for a 1st offense and 270 days for a 2nd or subsequent offense. If the offense involves a motor vehicle accident that resulted in the death of another person, your suspension shall be 1 year for a 1st offense and for a 2nd or subsequent offense your license shall be revoked.**

**If you refuse a test, or take a test with a result of 0.15 or more, you shall be ineligible for modification of your suspension or the issuance of a restricted license, unless you participate in the Ignition Interlock System Program under [TR] §[ ]16-404.1.**

(Bold and/or red text in original).

According to the Advice of Rights form, at 1:47 a.m., Nelson refused to sign it. Both the Advice of Rights form and the Officer's Certification and Order of Suspension indicate that Nelson refused to take an alcohol concentration test. According to the Officer's Certification and Order of Suspension, Corporal Foor confiscated Nelson's commercial driver's license and provided him with a temporary license that would expire in forty-five days.

- 4 -

## Administrative Hearing

Nelson requested an administrative hearing, which took place on August 17, 2017. At the administrative hearing, Corporal Foor testified that, on November 6, 2016, at approximately 1:30 a.m. or 2 a.m., while he was driving "south of Poplar Ridge Road[,]" he saw a vehicle "off the roadway[.]" The vehicle's "front end was smashed [] in[.]" Corporal Foor approached the vehicle, and saw Nelson lying "on the side of the seat" with a large cut on his face. Nelson was conscious, but unable to move. Corporal Foor called Emergency Medical Services, which responded to the scene, and Emergency Medical Services personnel decided to take Nelson to a hospital. Nelson was placed on a stretcher and taken to UM Prince George's Hospital Center. Corporal Foor followed the ambulance to the hospital.

Nelson testified that he was unconscious at the scene of the accident. According to Nelson, he experienced a concussion, the effects of which lasted one-and-a-half to two weeks. Nelson testified that he did not remember being involved in a motor vehicle accident, encountering Corporal Foor, being asked to take a field sobriety test, or giving blood at the hospital. According to Nelson, he never refused to take an alcohol concentration test, which he would have been willing to take.

After Nelson finished testifying, the ALJ heard argument from his counsel, who moved that no action be taken against Nelson. Nelson's counsel contended that, under the circumstances surrounding the accident, Nelson was not coherent enough to refuse to take an alcohol concentration test. The ALJ observed that, in the Officer's Certification and Order of Suspension and the Advice of Rights form, Corporal Foor stated that Nelson

- 5 -

refused to take an alcohol concentration test, whereas Nelson testified that he did not "remember anything." The ALJ stated:

> I have to do a credibility assessment[,] and[,] when the choice is between someone who has a clear recollection of what happened and contemporaneously documented it versus someone who says [']I don't remember['] or [']I don't recall,['] I'm going to give more weight to the person who remembers what happened.

The ALJ also stated that it was "clear that [] Nelson was conscious, at least when he was interacting with" Corporal Foor. The ALJ explained that, given that Corporal Foor "essentially attest[ed] under penalties of perjury that [] Nelson refused, . . . the reasonable inference that I can draw from that . . . is that Corporal Foor did not determine[,] based on his interaction with [] Nelson at the time[,] that [] Nelson was incapable of refusing" to take an alcohol concentration test. Nelson's counsel responded that that was "a judgment call on" Corporal Foor's part. Nelson's counsel stated that Nelson had a visible scar, and that Corporal Foor knew that Nelson had suffered "a bad injury." The ALJ pointed out: "[S]imply because someone is . . . injured to the point that they need . . . medical attention, does not mean that they're injured to the point that they can't make knowing and voluntary decisions." The ALJ explained that a reasonable inference could be drawn that Corporal Foor "did not independently direct the drawing of blood because[,] based on what he was observing on that evening[,] he did not think that [] Nelson was incapable of refusing."

The ALJ denied the motion to take no action and issued a "Findings of Fact" form in which she determined that Nelson had violated TR § 16-205.1, and ordered that Nelson's commercial driver's license would be disqualified for 12 months, and that, instead of having his driver's license suspended for 270 days, he would participate in the Ignition

- 6 -

Interlock System Program.

## Petition for Judicial Review

On September 8, 2017, in the circuit court, Nelson petitioned for judicial review. On April 13, 2018, the circuit court conducted a hearing on the petition. At the hearing, Nelson's counsel contended that the issues were whether Nelson was capable of refusing a breath test, and whether the breath test was "even applicable . . . based on the circumstances." Nelson's counsel argued that Nelson was incapable of refusing to take an alcohol concentration test, and that Corporal Foor should have directed medical personnel to take his blood. After hearing the parties' arguments, the circuit court took the matter under advisement.

On April 16, 2018, the circuit court issued an Opinion and Order, reversing the ALJ's decision and remanding with instructions to take no action with regard to Nelson's commercial driver's license. The circuit court acknowledged that substantial evidence supported the ALJ's determination that Corporal Foor did not need to direct medical personnel to involuntarily take blood from Nelson. The circuit court reasoned, however, that Md. Code Ann., Cts. & Jud. Proc. (1974, 2013 Repl. Vol.) ("CJ") § 10-305(a) required Corporal Foor to specifically request that Nelson take a blood test. The circuit court determined that there was no evidence that Corporal Foor requested that Nelson take a blood test. The circuit court concluded that the ALJ erred in failing to apply CJ § 10-305(a) in determining that Nelson violated TR § 16-205.1.

## Petition for a Writ of *Certiorari*

On May 18, 2018, the MVA petitioned for a writ of *certiorari*, raising the following

issue:

> Where the [ALJ] found that a [driver], after being properly advised via the []
> Advice of Rights form, expressly refused to take a blood-alcohol
> concentration test, was the [driver] correctly suspended [] for a test refusal
> under [TR] § 16-205.1, even though the detaining officer did not deviate
> from the Advice of Rights form and explicitly offer the [driver] the option of
> choosing between a breath[] test and a blood test?

On July 12, 2018, this Court granted the petition. See Motor Vehicle Admin. v. Nelson,

460 Md. 2, 188 A.3d 917 (2018).

## DISCUSSION

The MVA contends that the circuit court erred in concluding that Corporal Foor was

required to specifically request that Nelson take a blood test. The MVA argues that TR §

16-205.1 simply requires an officer to ask a detained driver to take an alcohol concentration

test, and does not require the officer to advise whether the alcohol concentration test will

be a breath test or a blood test, or to specifically request that a driver take a blood test. The

MVA asserts that the type of alcohol concentration test that is administered depends on the

detained driver's location and condition, as well as the availability of test equipment. The

MVA maintains that CJ § 10-305(a) does not require an officer to specify the type of

alcohol concentration test, as that is not up to the officer or the driver; instead, CJ § 10-

305(a) requires an officer to conduct a breath test except under certain circumstances, such

as when the driver is unconscious.

Nelson responds that the circuit court was correct in determining that the ALJ failed

to account for CJ § 10-305(a). Nelson contends that Corporal Foor was required to request

that he take a blood test because his injuries were serious enough to warrant a trip to the

hospital.

"Where, as here, the facts are undisputed, a court determines whether an administrative law judge's decision is premised upon an erroneous conclusion of law." Seenath, 448 Md. at 162, 136 A.3d at 895 (citation omitted). "A court reviews with some deference an administrative law judge's interpretation of a statute that the relevant administrative agency administers." Motor Vehicle Admin. v. Gonce, 446 Md. 100, 109, 130 A.3d 436, 442 (2016) (citation omitted).

TR § 16-205.1(b)(2)(ii)—which applies unless "a person is involved in a motor vehicle accident that results in the death of, or a life threatening injury to, another person[,]" TR § 16-205.1(c)(1)—provides in pertinent part:

> if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, [or] while impaired by alcohol, . . . , and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall . . . **[r]equest that the person permit a test to be taken[.]**

(Emphasis added). "If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of testing, the police officer shall[,]" among other things, "[c]onfiscate the person's driver's license[.]" TR § 16-205.1(b)(3)(i).[1]

---

[1]This case does not involve TR § 16-205.1(d), which governs what an officer must do when a driver is unconscious or otherwise incapable of refusing to take an alcohol concentration test, and states:

> (1) If a police officer has reasonable grounds to believe that a person has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol

(Continued...)

- 9 -

TR § 16-205.1(a)(1)(iii) defines the word "test" as follows:

"Test" means, unless the context requires otherwise:

      1. A test of a person's breath or of 1 specimen of a person's blood to determine alcohol concentration;

      2. A test or tests of 1 specimen of a person's blood to determine the drug or controlled dangerous substance content of the person's blood; or

      3. Both:

          A. A test of a person's breath or a test of 1 specimen of a person's blood, to determine alcohol concentration; and

          B. A test or tests of 1 specimen of a person's blood to determine the drug or controlled dangerous substance content of the person's blood.

CJ § 10-305(a) governs the type of alcohol concentration test that must be administered where a driver consents to take an alcohol concentration test, stating:

The type of test administered to the defendant to determine alcohol concentration shall be the test of breath except that the type of test administered shall be:

---

that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, or in violation of § 16-813 of this title, and if the police officer determines that the person is unconscious or otherwise incapable of refusing to take a test, the police officer shall:

      (i) Obtain prompt medical attention for the person;

      (ii) If necessary, arrange for removal of the person to a nearby medical facility; and

      (iii) If a test would not jeopardize the health or well-being of the person, direct a qualified medical person to withdraw blood for a test.

(2) If a person regains consciousness or otherwise becomes capable of refusing before the taking of a test, the police officer shall follow the procedure set forth in subsection (b) or (c) of this section.

(1) A test of blood if:

      (i) The defendant is unconscious or otherwise incapable of refusing to take a test to determine alcohol concentration;

      (ii) Injuries to the defendant require removal of the defendant to a medical facility;

      (iii) The equipment for administering the test of breath is not available; or

      (iv) The defendant is required to submit to a test of one specimen of blood under [TR] § 16-205.1(c)(1)(ii)[]; or

(2) Both a test of the person's breath and a test of one specimen of the person's blood if the defendant is required to submit to both a test of the person's breath and a test of one specimen of the person's blood under [TR] § 16-205.1(c)(1)(iii)[].

In <u>Motor Vehicle Admin. v. Dove</u>, 413 Md. 70, 86, 84-85, 89, 991 A.2d 65, 74, 73, 76 (2010), this Court held that a blood test was warranted under CJ § 10-305(a)(1)(ii), and that a driver's refusal to take a blood test, and his offer to take a breath test instead, constituted a refusal to take an alcohol concentration test. In <u>Dove</u>, <u>id.</u> at 75-76, 991 A.2d at 68, the driver was involved in a motor vehicle accident, and received medical treatment at the scene of the accident. A law enforcement officer responded to the scene of the accident, observed that the driver smelled strongly of alcohol, and noticed that the driver's eyes were red and watery. <u>See id.</u> at 76, 991 A.2d at 68. Paramedics transported the driver to a hospital. <u>See id.</u> at 76, 90, 991 A.2d at 68, 77. There, the officer read the Advice of Rights form to the driver and asked him to take a blood test. <u>See id.</u> at 76, 90, 991 A.2d at 68, 77. The driver refused because he had a fear of needles. <u>See id.</u> at 76, 991 A.2d at 68. The driver offered to take a breath test, and offered to refuse medical treatment and go to

the police station.  See id. at 76, 991 A.2d at 68.  The officer rejected both offers.  See id. at 76, 991 A.2d at 68.

This Court observed that, "[b]ecause [the driver]'s injuries required removal to [a h]ospital, [the officer] properly offered a blood test to determine alcohol concentration pursuant to" CJ § 10-305(a)(1)(ii).  See id. at 87, 991 A.2d at 75.  This Court noted that, under CJ § 10-305(a), "neither the officer nor the driver has the discretion to choose whether the alcohol concentration test may be a breath test or a blood test."  Id. at 88, 991 A.2d at 75.  Under CJ § 10-305(a), where a driver's injuries are severe enough to warrant the driver being taken to the hospital and the driver consents to an alcohol concentration test, the test that is administered shall be a blood test.  See id. at 87-88, 991 A.2d at 75.  In Dove, id. at 89, 991 A.2d at 76, this Court determined that there was "substantial evidence supporting the ALJ's conclusion that [the driver] knowingly and voluntarily refused the alcohol concentration test[.]"  This Court explained that, at the administrative hearing, the driver "acknowledged that he refused a blood test . . . . [The driver]'s offer to submit to a breath test fail[ed] to mitigate his refusal to take a blood test . . . because . . . the only alcohol concentration testing option available to him under [CJ] § 10-305(a) [] was a blood test."  Id. at 89-90, 991 A.2d at 76.

Here, we conclude that, under TR § 16-205.1(b)(2)(ii)'s plain language, an officer is simply required to request that a driver who is detained on suspicion of driving or attempting to drive under the influence of or while impaired by alcohol take an alcohol concentration test; in other words, an officer is not required to specifically request that the driver take a blood test or a breath test.  TR § 16-205.1(b)(2)(ii) unequivocally states that

an "officer shall . . . [r]equest that the person permit **a test** to be taken[.]" (Emphasis added). In turn, TR § 16-205.1(a)(1)(iii) defines the word "test" as a blood test, a breath test, or both. Nothing in TR § 16-205.1 requires an officer to specify a type of alcohol concentration test when requesting such a test to be taken.

Nor does CJ § 10-305(a) impose such a requirement. CJ § 10-305(a) lists the circumstances under which an officer must administer a blood test, as opposed to a breath test. For example, as explained above, under CJ § 10-305(a)(1)(ii), where "[i]njuries to [a driver] require removal of the [driver] to a medical facility[,]" and the driver consents to an alcohol concentration test, it must be a blood test. No provision in CJ § 10-305(a) directs an officer to specifically request that a driver take a blood test.

Our holding is warranted not only by CJ § 10-305(a)'s plain language, but also by its legislative history. Before 1983, CJ § 10-305(a)'s predecessor allowed drivers to choose between a blood test and a breath test. See 1983 Md. Laws 1033 (Pt. 2, Ch. 289, S.B. 513). In Dove, 413 Md. at 88, 991 A.2d at 75, this Court explained why there were calls to amend CJ § 10-305(a)'s predecessor:

> Concern arose regarding the increasing number of [driver]s choosing blood tests over breath tests because of: (1) the difficulty of accomplishing the blood test in certain situations; (2) the delay in processing caused by administering blood tests instead of breath tests; and (3) the problems caused by the necessity to have medical personnel attend hearings where a blood test was used.

(Citation omitted). In 1983, to address this concern, the General Assembly amended CJ § 10-305(a)'s predecessor to no longer allow drivers to choose between a blood test and a breath test. See 1983 Md. Laws 1033-34 (Pt. 2, Ch. 289, S.B. 513). Since 1983, CJ § 10-

- 13 -

305(a) and its predecessors have generally required a breath test where a driver consents to an alcohol concentration test, except in a limited number of circumstances in which a blood test is required.  See id.

The 1983 amendment to CJ § 10-305(a)'s predecessor demonstrates that there is no longer a need for an officer to specifically request that a driver take a blood test or a breath test.  When CJ § 10-305(a)'s predecessor allowed drivers to choose between a blood test and a breath test, an officer was required to question a driver along the following lines: "Are you willing to take a breath test or a blood test?  If so, which one?"  Now that drivers no longer have the discretion to choose the type of test, it would be pointless for an officer to specify the type of test, as that is not up to the driver; to the contrary, it is determined by CJ § 10-305(a).

Our conclusion furthers TR § 16-205.1's purpose, which is "to reduce the incidences of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests[.]"  Motor Vehicle Admin. v. Smith, 458 Md. 677, 690, 183 A.3d 211, 218 (2018) (cleaned up).  If we were to hold that an officer must specify the type of alcohol concentration test to be taken, then, where an officer requested that a drunk driver take an alcohol concentration test without identifying the type of alcohol concentration test, the drunk driver could freely refuse and avoid a suspension of his or her driver's license.  Holding that, for an advisement to be valid, an officer must specify the type of alcohol concentration test is not consistent with TR § 16-205.1's purpose of encouraging drivers to take alcohol concentration tests.

The circuit court was mistaken to the extent that it reasoned that, under Dove, an

- 14 -

officer must specify the type of alcohol concentration test. This Court did not hold as much in <u>Dove</u>. In <u>Dove</u>, we did not address the question of whether the officer was required to specifically request that the driver take a blood test (which the officer did), as opposed to generally requesting that the driver take an alcohol concentration test. Instead, the three issues before this Court were:

> 1) whether the circumstances, particularly [the driver]'s removal to the hospital for medical treatment, warranted a blood test rather than a breath test pursuant to [CJ] § 10-305[]; 2) whether [the driver] refused the alcohol concentration test, when he offered to take a breath test instead of a blood test; and 3) if [the driver] refused the alcohol concentration test, whether the breath test performed by hospital personnel negated [the driver]'s refusal.

<u>Id.</u> at 84-85, 991 A.2d at 73. In <u>Dove</u>, <u>id.</u> at 87, 991 A.2d at 75, this Court observed that the officer had properly offered a blood test. Nowhere in <u>Dove</u> did this Court indicate that the officer would have violated TR § 16-205.1 or CJ § 10-305 if the officer had generally requested that the driver take an alcohol concentration test, as opposed to specifically requesting that the driver take a blood test.

For the above reasons, neither TR § 16-205.1 nor CJ § 10-305 requires an officer to specifically request that a driver take a blood test or a breath test. The circuit court erred in reasoning otherwise.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE ADMINISTRATIVE LAW JUDGE'S DECISION. RESPONDENT TO PAY COSTS.**