*Motor Vehicle Administration v. Megan E. Smith*, No. 42, September Term 2017, Opinion by Hotten, J.

**ADMINISTRATIVE LAW – DUE PROCESS – RIGHTS AFFORDED TO DETAINEES –** The Court of Appeals held that pursuant to Transportation Article § 16-205.1 if a person is detained under the suspicion of driving while impaired or intoxicated, they by virtue of operating a motor vehicle in the state, the individual has provided implied consent permitting the administration of a test for blood alcohol concentration.

**ADMINISTRATIVE LAW – DUE PROCESS – RIGHTS AFFORDED TO DETAINEES –** The Court of Appeals held that Transportation Article § 16-205.1 provides to any person suspected of driving while impaired or intoxicated, the right to refuse a breath test for blood alcohol concentration, upon proper advisement of the sanctions associated with any such refusal.

**ADMINISTRATIVE LAW – DUE PROCESS – SUFFICIENCY OF PROCESS –** The Court of Appeals held that current administrative procedural safeguards adequately protect the constitutional rights of individuals detained for suspicion of driving while intoxicated.

IN THE COURT OF APPEALS

OF MARYLAND

No. 42

September Term, 2017

_____

MOTOR VEHICLE ADMINISTRATION

v.

MEGAN E. SMITH

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Barbera, C.J., Adkins and Watts, JJ.,
concur.

_____

Filed: April 20, 2018

**FACTUAL AND PROCEDURAL BACKGROUND**

This appeal was taken from the review of a decision of the Circuit Court for Saint Mary's County, regarding a decision from Administrative Law Judge John Henderson ("ALJ"), that found Respondent, Megan Smith, was coerced into submitting to an alcohol breath test required by Md. Code (Repl. Vol. 2012), § 16-205.1[1] of the Transportation Article, ("TRANSP.").[2] In affirming the ALJ, the circuit court found that there was substantial evidence supporting the ALJ's decision that Respondent did not voluntarily submit to the testing. As a result, the Maryland Department of Transportation – Motor Vehicle Administration ("MVA"), timely noted an appeal to the Court of Appeals. The MVA presents the following question for our review:

> Did the administrative law judge err in dismissing an Order of Suspension for a driver who had a breath alcohol concentration test result of .18 because the investigating officer refused to allow her to visit the restroom before submitting to alcohol chemical testing, where the officer (1) had reasonable grounds to believe that she had been driving while under the influence of

---

[1] TRANSP. § 16-205.1 is also known as the "implied consent administrative per se law." *See Motor Vehicle Administration v. Krafft*, 452 Md. 589, 591, 158 A.3d 539, 540 (2017).

[2] TRANSP. § 16-205.1(a)(2) provides:
Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10-302 through 10-309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16-813 of this title.

alcohol and (2) fully and correctly advised her of the administrative sanctions that could be imposed?

For reasons we shall explain *infra*, we answer the question in the affirmative, vacate the judgment of the circuit court, and remand the case with instructions.

The administrative hearing adduced the following facts. On April 19, 2016, Officer Christopher Ditoto pulled Respondent over on Great Mills Road, near the intersection of Light Westbury Boulevard in Saint Mary's County, at approximately 2:05 am. Officer Ditoto observed Respondent operating a motor vehicle without her headlights activated. During the course of the stop, Officer Ditoto detected a strong odor of alcohol, and asked Respondent to exit the vehicle and perform field sobriety tests. After Respondent failed to execute the field sobriety tests in a satisfactory manner, Officer Ditoto detained her under the suspicion that she was driving under the influence or while impaired by alcohol and transported her to the Maryland State Police barracks. While at the police barracks, Officer Ditoto read the DR-15 form (Advice of Rights) to Respondent,[3] which included information regarding the nature of the detention, and the sanctions associated with any refusal to submit to a chemical test.[4] Officer Ditoto read the form to Respondent and

---

[3] The DR-15 form outlines several important pieces of information for the suspected driver including the possible sanctions associated with varying levels of blood alcohol concentration as well as the sanctions for the refusal to take the test, and the right to have an administrative hearing among other things.

[4] TRANSP. § 16-205.1(b) outlines the applicable sanctions for drivers who produce a chemical test result greater than 0.08 or who refuse testing. The statute provides that a test result greater than 0.08 can result in a suspension of the person's driving privilege for 180 days for the first offense. TRANSP. § 16-205.1(b)(1)(i)(5) goes on to provide that upon the refusal to submit to chemical testing the person's driving privilege is suspended for 270 days.

thereafter she signed it. Respondent asked no questions but requested to use the restroom prior to taking the chemical test, but Officer Ditoto denied the request. In testifying before the ALJ, Officer Ditoto explained why the request was denied stating, "[s]he would not have been allowed to use the bathroom until after the [i]ntoximeter."[5] After deciding to submit to testing, the subsequent test revealed a blood alcohol concentration of 0.18, more than twice the legal limit, of 0.08.

*Administrative Proceedings*

The Office of Administrative Hearings heard the matter on August 31, 2016 and November 16, 2016. On the first day of the hearing, the ALJ considered testimony from several witnesses, including Respondent and her parents. On the second day of the hearing, the ALJ considered testimony from Officer Ditoto, who testified that the procedure used comported with his statutory duty under COMAR 10.35.02.08G[6] and TRANSP. § 16-205.1. Additionally the ALJ heard arguments concerning Respondent's Motion for No

---

[5] An intoximeter is "[a] non-portable instrument for measuring the alcohol content of a person's breath, especially in cases of suspected drunken driving, usually sited at a police station." Intoximeter definition, English Oxford Dictionary, https://en.oxforddictionaries.com/definition/intoximeter, *archived at* https://perma.cc/WRN4-224Y

[6] COMAR 10.35.02.08G provides the method for the administration of alcohol chemical testing. COMAR 10.35.02.08G provides: "(1) For at least 20 minutes before a breath sample is taken, an individual may not: (a) Eat or drink; (b) Have any foreign substance in the individual's mouth or respiratory tract; or (c) Smoke." The Regulation goes on to provide that: "(2) The individual shall be observed and mouth checked."

Action.[7] Respondent advanced several arguments, which included that she suffered from Trisomy X syndrome[8], a cognitive disorder that severely affected her ability to understand the DR-15 form. Respondent further asserted that she desperately needed to use the restroom, and when combined with the effects of her condition, resulted in an inability to consider the choices before her. In support of this argument, Respondent's father testified that Respondent was permanently disabled, and while in some ways self-sufficient, still required continued assistance throughout her day-to-day activities. Respondent presented no other evidence to support her cognitive deficit argument, the impact of the alleged deficit, or that Officer Ditoto was aware of any alleged deficit.

At the conclusion of the evidence, the ALJ rendered several Findings of Fact, Conclusions of Law, and granted Respondent's Motion for No Action. Although the ALJ determined that Respondent failed to satisfy her burden of demonstrating that she did not understand the DR-15 form, the ALJ found that Respondent had been coerced by Officer

---

[7] A Motion for No Action arises "[i]n an administrative license suspension hearing, [and is] a '[f]avorable decision' [and] is defined as a 'dismissal or *no action* decision by the administrative law judge....' COMAR 28.03.01.02(B)(2)(a)(i) (emphasis added). *See also* Leonard R. Stamm, Maryland DUI Law 63 (2008–2009 ed.) (describing a motion for 'no action' as a motion that a driver can make after the MVA has presented its evidence and after all evidence has been presented)." *Najafi v. Motor Vehicle Administration*, 418 Md. 164, 168, 12 A.3d 1255, 1257 n.4 (2011).

[8] Trisomy X or Triple X syndrome is a disorder that affects females and is characterized by the presence of an additional X chromosome. Triple X definition, National Organization for Rare Disorders, https://rarediseases.org/rare-diseases/trisomy-x/, *archived at* https://perma.cc/3M88-Q9WC . The effects and symptoms vary but some of the symptoms include speech and language delays as well as learning disabilities.

Ditoto's refusal of her request to use the restroom, which impacted her ability to knowingly and voluntarily submit to the alcohol chemical test required under TRANSP. § 16-205.1.

*Circuit Court Hearing*

The MVA sought judicial review to the Circuit Court for Saint Mary's County pursuant to TRANSP. § 12-209(a)(2).[9] The circuit court considered arguments during a hearing on May 16, 2017. In its written opinion on June 19, 2017, the court determined that the ALJ decision was supported by substantial evidence in the record, and that the officer's refusal to allow Respondent to use the restroom constituted a "road block" that impacted Respondent's ability to exercise her statutory rights under TRANSP. §16-205.1. *See Forman v. Motor Vehicle Administration* 332 Md. 201, 215, 630 A.2d 753, 761 (1993). Following the circuit court decision, the MVA noted an appeal to this Court pursuant to Md. Code (Repl. Vol. 2012), § 12-305 of Courts and Judicial Proceedings Article.

## STANDARD OF REVIEW

"When this Court reviews a decision of an administrative agency, we take the same posture as the circuit court or the intermediate appellate court, and limit our review to the agency's decision." *Anderson v. Gen. Casualty. Ins. Co.,* 402 Md. 236, 244, 935 A.2d 746, 751 (2007) "Where the agency's findings of fact are supported by substantial evidence, in the form either of direct proof or permissible inference, in the record before the agency, an appellate court may not substitute its judgment, even on the question of the appropriate

---

[9] TRANSP. § 12-209(a)(2) provides: "If the matter concerns the license of an individual to drive and the individual is a resident of this State, the aggrieved party may appeal to the circuit court for the county in which the individual resides."

5

inference to be drawn from the evidence, for that of the agency." *Liberty Nursing Ctr., Inc. v. Dep't of Health & Mental Hygiene*, 330 Md. 433, 442, 624 A.2d 941, 945 (1993). Stated differently, this Court "reviews an agency decision [to assess] whether there is substantial evidence in the record to support the decision and whether the decision is based upon an error of law. *Motor Vehicle Administration v. Krafft*, 452 Md. 589, 603, 158 A.3d 539, 547 (2017). As we have previously stated, "the test for substantial evidence is 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached[.]'" *Motor Vehicle Administration v. Shea*, 415 Md. 1, 18, 997 A.2d 768, 778 (2010). ). Further, the "test 'requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions[.]'" *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.*, 313 Md. 614, 625, 547 A.2d 190, 195 (1988) (quoting *State Insurance Commissioner v. National Bureau of Casualty Underwriters*, 248 Md. 292, 309, 236 A.2d 282, 292 (1967)).

"While this standard accords less deference to an agency's legal conclusions than to its fact findings, a reviewing court should give weight to the administrative agency's interpretation and application of the statute that the agency administers." *Motor Vehicle Administration v. Deering*, 438 Md. 611, 622, 92 A.3d 495, 502 (2014). However, when the case "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (quoting *Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612

6

(2002)).  As such, we will determine whether there was substantial evidence to support the ALJ findings while addressing the application of TRANSP. § 16-205.1 *de novo*.

## DISCUSSION

We must consider the sufficiency of the due process afforded to Respondent and determine whether the officer's actions impermissibly induced Respondent to submit to an alcohol breath test.  Under TRANSP. § 16-205.1, where an officer determines that reasonable grounds exist to believe that a person has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, the officer "shall" detain the suspected driver, advise the driver of the possible administrative sanctions associated with the offense, and attempt to conduct an alcohol breath test.  TRANSP. § 16-205.1(a)(2) further indicates that the operator of a motor vehicle in Maryland is "deemed to have consented" to a breath test that measures blood alcohol concentration if the person should be detained on presumption of driving or attempting to drive while under the influence of alcohol.  The MVA asserts that Respondent was advised of her statutory rights as required by TRANSP. § 16-205.1, and that Officer Ditoto's handling of Respondent was in accordance with COMAR 10.35.02.08G.  In that regard, the MVA argued that Officer Ditoto's conduct was not coercive but related to his obligation to ensure the integrity of any examination.  *See* COMAR 10.35.02.08G.  For the reasons discussed *infra,* we find that the officers' actions did not violate Respondent's due process rights and that the ALJ's determination was erroneous.

7

The issue before us relates to the due process afforded to individuals detained on suspicion of drunk driving. To establish a due process violation, one must demonstrate the deprivation of a protected liberty or property interest. *See Town of La Plata v. Faison-Rosewick LLC*, 434 Md. 496, 526, 76 A.3d 1001, 1019 (2013). The inquiry begins with the determination of the specific interest involved in the challenge, followed by an examination of the sufficiency of the process afforded to the individual. This analysis requires us to evaluate three factors articulated by this Court in, *In re Ryan W., 434 Md. 577, 609, 76 A.3d 1049, 1068 (2013). In *Ryan,* the Court compared the potential risk for deprivation against the procedure employed in order to ascertain the individual risk level. We subsequently determined that where the risk of deprivation is substantial, and the procedure in place minimal, a due process violation exists. In determining the risk the *Ryan* court articulated the following factors which aid in the evaluation of risk: "[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. Ultimately, "[i]n determining what process is due, this Court will balance both the government interests and the private interests affected." *Id*. Finally, when evaluating the invocation or waiver of a due process right, the inquiry turns on whether the invocation or waiver was made knowingly and voluntary. As we will demonstrate, the procedure afforded to Respondent did not violate due process, and her decision to submit to chemical testing was voluntary.

During the administrative hearing, Respondent asserted that Officer Ditoto violated her due process rights in refusing her request to use the restroom until she decided whether to take the test, thereby influencing whether she should submit to testing. In support, Respondent alleged that she suffered from cognitive delays that affected her understanding of the DR-15 form, exacerbated when Officer Ditoto refused her request to use the restroom. As such, Respondent perceived that her only option was to submit to testing in order to use the restroom. Although the ALJ noted that Respondent might suffer from Triple X syndrome, which could affect cognitive development, Respondent presented no evidence regarding the condition or its severity, nor did she establish any impairment evidencing that the condition affected the advisement or that she failed to understand the rights as advised. The ALJ also noted that the DR-15 form did not confuse Respondent, and that Officer Ditoto was not aware of the condition. Ultimately, the ALJ concluded that while Respondent may suffer from the condition, it did not influence her appreciation of the rights as advised. Therefore, we must consider whether the refusal of a request to use the restroom constitutes coercive action sufficient to violate a detained driver's due process rights. To address this question, we must examine factors articulated by this Court in *Ryan*.[10]

---

[10] For continuity, the factors will be evaluated out of order because the first and third factors are closely related.

***Weighing competing goals: the private interest versus the governmental interest***

The first and third factors articulated by the *Ryan* Court, call for a balance between an individual's interest and any interest held by the government. Often these interests are in opposition, requiring one to yield to the other. In this case, there are two rights in opposition. On one hand, we have the individual right to due process before the imposition of State sanctions. Meaning, before the state may impose a sanction on a detained driver there must be compliance with due process requirements. *See Hare v. Motor Vehicle Administration*, 326 Md. 296, 301, 604 A.2d 914, 916 (1992) (holding "[t]he continued possession of a driver's license ... may become essential to earning a livelihood; as such, it is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment[]"). To protect this right there is an explicit advising requirement mandating the disclosure of rights prior to the imposition of alcohol breath testing. *See* TRANSP. § 16-205.1. In this case, Respondent argued that the refusal of her bathroom request infringed upon her ability to decide whether to submit to testing, thereby violating her due process rights. The right to refuse to submit to alcohol testing, however, is not absolute, but subject to balancing against the State's restraint of that interest.

On the other hand, the State has an equally compelling interest in subjecting suspected drivers to alcohol chemical testing. We have previously articulated that the purpose of TRANSP. § 16-205.1 is to ensure the safety of other drivers and have consistently maintained the importance of this interest. *See generally Motor Vehicle Administration v. Shepard*, 399 Md. 241, 255, 923 A.2d 100, 108 (2007) (holding that

10

TRANSP. § 16-205.1 was designed to reduce the incidence[s] of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests); *Motor Vehicle Administration v. Jones*, 380 Md. 164, 178-79, 844 A.2d 388, 396-97 (2004) (holding that TRANSP. § 16-205.1 is designed to provide a swift penalty aimed at ensuring driver safety, which is separate from any criminal penalties that may be imposed for the driving offenses).

As we have stated, "[e]very state has enacted some form of an implied consent law as part of its strategy to combat drunk driving." *Motor Vehicle Administration v. Krafft,* 452 Md. 589, 592, 158 A.3d 539, 541 (2017). Additionally, "the statute provides an incentive to take the test, at least in terms of the potential administrative sanction." *Id*. at 594, 158 A.3d at 542. This process has been limited however because TRANSP. § 16-205.1 provides that implied consent can be withdrawn. In determining whether a due process violation has occurred, we must evaluate the interest of the respective parties as well as the process applied thereto. If a suspected driver is properly advised, that individual is free to refuse alcohol chemical testing. Since the ALJ found that Officer Ditoto advised Respondent, we can safely conclude that her due process rights were protected. When viewed in the context of *Ryan,* we see that there is a proper balance between the public or individual interest and that of the government. *See Ryan W.,* 434 Md. at 609, 76 A.3d at 1068 (holding that the Court must weigh the factors to ascertain the sufficiency of the process).

11

*Determining the extent of the risk of an erroneous deprivation*

An evaluation of the second *Ryan* factor to TRANSP. § 16-205.1 reveals that it provides sufficient protections to prevent the erroneous deprivation of constitutional rights. This factor requires an evaluation of the process applied with an eye toward the likelihood of erroneous deprivation. In addition, we must evaluate the procedures applied and any burdens resulting from additional procedures. To address this factor, we must examine the process applied. TRANSP. § 16-205.1, in relevant part provides:

> (a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10-302 through 10-309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16-813 of this title.

The plain language of the statute creates a presumption that a person implicitly consents to testing when suspected of driving while intoxicated, simply by obtaining licensing in the State. Implied consent is in some ways limited, as the statute states:

> (b)(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more….

TRANSP. § 16-205.1 (b)(1). This section reflects that a person cannot be compelled to submit to alcohol chemical testing despite the inherent implied consent contained in

12

TRANSP. § 16-205.1 except in instances where the driver is involved in a fatal or life threatening accident. Additionally, this section imposes a requirement that the suspected driver be apprised of the sanctions associated with the refusal to submit to testing. In *Motor Vehicle Administration v. Dove* we stated, "[an] officer must advise a driver of consequences of refusing the alcohol concentration test, thus affording the driver the opportunity to make an informed choice." 413 Md. 70, 83, 991 A.2d 65, 73 (2010). Therefore, before testing can be imposed, the statute requires proper advisement. Specifically, drivers may not be subject to involuntary testing and are explicitly informed of this freedom prior to the administration of testing. Next, if an individual refuses testing, the refusal must be the product of a knowing, voluntary, and informed decision. Finally, the implicated driver has the opportunity to challenge the deprivation of a right during the administrative hearing.

In sum, the application of the *Ryan* factors to TRANSP. § 16-205.1 weigh in favor of the sufficiency of the process. Here, the potential risk of deprivation is low when evaluated against the process afforded. The statute includes a process by which individuals are advised of their rights and given the opportunity to refuse testing if they so choose. A part of that advisement includes written acknowledgement, obtained through the Advice of Rights form, which outlines the potential sanctions, and affords the suspected driver the opportunity to consider whether to submit to testing. The driver also has the opportunity to challenge the sufficiency of the process as applied to them during an administrative

13

hearing. Therefore, we determine that the current process is sufficient to protect a suspected driver's due process rights when being asked to submit to alcohol testing.

### *Evaluating the voluntariness of the waiver*

In addressing the voluntariness of any consent to testing, this Court has stated, "a person detained for drunk driving must be capable of making a knowing and voluntary decision to refuse the alcohol concentration test." *Forman v. Motor Vehicle Administration*, 332 Md. 201, 218, 630 A.2d 753, 762 (1993). To be capable of making a "knowing and voluntary decision," the suspected driver must be fully advised of the potential sanctions associated with alcohol chemical testing. We have previously addressed the issue of an officer's advisement and stated that:

> In Maryland, a prerequisite to the MVA's suspension of a driver's license after a hearing is a finding that the police officer "requested a test after the person was *fully* advised of the administrative sanctions that shall be imposed...." [TRANSP.] § 16–205.1(f)(8)(i)(3) (emphasis added). "Fully advised" means not only advised *initially*, but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute. Further, the officer certainly must not in any way induce the driver into refusing the test, a result running counter to the statute's purpose of encouraging drivers to submit to alcohol concentration tests. *See* [TRANSP.] § 16–205.1(b)(1)(i) & (ii) (providing substantially longer and non-discretionary suspension for test refusal versus test failure, to encourage drivers to take the test).

*Id*. at 217, 630 A.2d at 762. There is a requirement that the "State not mislead the defendant or construct road blocks, thus unduly burdening [the defendant's] decision-making." *Id*. at 215, 630 A.2d at 761. However, "due process does not require the driver to be informed of more than the statute requires[.]" *Id*. In the instant case, Respondent was properly advised of her rights and voluntarily consented to testing.

14

With these considerations in mind, we turn to the facts surrounding Respondent's submission to testing. Once Officer Ditoto stopped Respondent for driving without activating her headlights, he detected the odor of alcohol upon approaching her vehicle. Suspecting that Respondent was driving under the influence of alcohol, he directed her to exit the vehicle and perform field sobriety tests, which she did not complete satisfactorily. These reasonable suspicions triggered TRANSP. § 16-205.1, which requires that an officer detain an individual upon reasonable suspicion. Thereafter, Respondent was taken into custody and transported to the Maryland State Police barracks, where she was provided a copy of the DR-15 Advice of Right form that contained a list of rights and the sanctions applicable to the submission or non-submission to chemical testing. Officer Ditoto read Respondent the form and thereafter she signed it.

We have previously determined that the refusal to submit to testing is appropriate when the suspected driver is advised of the consequences of that refusal, and that such a refusal is complete when it is communicated to the officer. *See Dove*, 413 Md. at 84, 991 A.2d at 73. No such communication occurred here. No evidence was offered to demonstrate that Respondent considered refusing the testing, that any conduct influenced her decision to take the test, or that the officer's conduct affected that decision. Additionally, assuming *arguendo* that there was a violation of Respondent's due process rights, the exclusionary rule is "inapplicable to license suspension proceedings conducted pursuant to the Statute." *Motor Vehicle Administration v. Shea*, 415 Md. 1, 17, 997 A.2d 768, 777 (2010). Therefore, even if there were a determination that the process applied to

15

Respondent denied due process protections, the remedy would not be the exclusion of the test results.

## CONCLUSION

Respondent failed to show that there was an insufficient advisement of rights in violation of her due process protections. Additionally, Respondent failed to establish that the refusal of her request to use the restroom impaired her ability to appreciate the gravity of the circumstances or overcame her intention to refuse testing. Accordingly, we determine that the process applied to Respondent afforded appropriate due process protections, and the refusal to permit her to use the restroom prior to her decision whether to take the test did not justify the grant of a Motion for No Action.

**JUDGMENT OF THE CIRCUIT COURT FOR SAINT MARY'S COUNTY IS VACATED. CASE IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT, MEGAN SMITH.**

16

IN THE COURT OF APPEALS

OF MARYLAND

No. 42

September Term, 2017
_____

MOTOR VEHICLE ADMINISTRATION

v.

MEGAN E. SMITH
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.
_____

Concurring Opinion by Watts, J., which
Barbera, C.J., and Adkins, J., join.
_____

Filed: April 20, 2018

Respectfully, I concur with the judgment in this case, and write briefly to explain my reasons for doing so. The issue in this case is not whether there is a right to refuse testing under Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2015 Supp.) ("TR") § 16-205.1, "commonly known as the 'implied consent, administrative per se law,'" see Motor Vehicle Admin. v. Gonce, 446 Md. 100, 102, 130 A.3d 436, 437-38 (2016) (citation omitted), because Megan Smith, Respondent, did not refuse testing, *i.e.*, an alcohol concentration test. TR § 16-205.1, by its plain language, legislates that a person has implicitly consented to testing. Specifically, TR § 16-205.1(a)(2) provides for "implied consent" as follows:

> Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State **is deemed to have consented**, subject to the provisions of §§ 10-302 through 10-309, inclusive, of the Courts and Judicial Proceedings Article, **to take a test** if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16-813 of this title.

(Emphasis added).[1]

---

[1]The language of the statute is clear. Despite TR § 16-205.1(a)(2)'s embodiment of "implied consent," a person cannot be compelled to take an alcohol concentration test unless the "person is involved in a motor vehicle accident that results in the death of, or a life[-]threatening injury to, another person and the person is detained by a police officer who has reasonable grounds to believe that the person has been driving or attempting to drive while" impaired, TR § 16-205.1(c)(1); see TR § 16-205.1(b)(1) ("Except as provided in [TR § 16-205.1](c) [], a person may not be compelled to take a test."). In other words, if a driver has not been involved in a motor vehicle accident that results in death or a life-threatening injury to another person, then the driver may refuse to take an alcohol concentration test.

If a person is detained on suspicion of driving or attempting to drive under the influence of drugs or alcohol, the person is deemed to have consented to alcohol or drug testing, and is subject to a mandatory suspension of his or her driver's license for not consenting to take a test. Thus, under ordinary circumstances, if a driver decides to take an alcohol concentration test, there would be no issue of voluntariness with respect to consent, *i.e.*, by operation of TR § 16-205.1, the driver is deemed to have impliedly consented to testing without an assessment of whether the driver's decision was voluntary.

An issue of voluntariness, however, could arise where, unlike in this case, a driver refuses testing. See Forman v. Motor Vehicle Admin., 332 Md. 201, 218, 630 A.2d 753, 762 (1993) ("[A] person detained for drunk driving must be capable of making a knowing and voluntary decision to **refuse** the alcohol concentration test." (Emphasis added)) see also Motor Vehicle Admin. v. Dove, 413 Md. 70, 84, 991 A.2d 65, 73 (2010) ("**Refusal** must be voluntary and with knowledge of the rights contained in the [Advice of Rights] form." (Emphasis added) (citation omitted)). Under that circumstance, *i.e.*, where a driver refuses alcohol concentration testing, a driver could properly raise an issue as to whether he or she was induced or coerced into refusing to take the test, thereby incurring the penalty for refusal. Rather than holding that a driver has a right to refuse to take an alcohol concentration test and that Smith's consent was voluntary, see Maj. Slip Op. at 10, 13, 14, I would hold that the issue of voluntariness is at stake only where a driver refuses to take an alcohol concentration test because, under TR § 16-205.1, a driver is deemed to have consented to such testing and the statute is designed to encourage drivers to take alcohol concentration tests. In other words, I would cabin the issue of voluntariness to the situation

- 2 -

in which a driver refuses to take an alcohol concentration test.  As this Court explained in Forman, 332 Md. at 217, 630 A.2d at 762, an "officer certainly must not in any way induce [a] driver into **refusing** [an alcohol concentration] test, a result running counter to [TR § 16-205.1]'s purpose of encouraging drivers to submit to alcohol concentration tests." (Emphasis added) (citation omitted).  In other words, an officer cannot "ma[k]e the **refusal** option more attractive."  Id. at 219, 630 A.2d at 763 (emphasis added).

Both Forman and Dove involve refusals to take alcohol concentration tests; significantly, nowhere in Forman or Dove did this Court indicate that a decision to take an alcohol concentration test, like a refusal to take an alcohol concentration test, is subject to a voluntariness test.  In short, there is no support in this Court's case law for the proposition that voluntariness can be at issue where a driver takes an alcohol concentration test.  Such a determination is counterintuitive because under TR § 16-205.1 a driver is already deemed to have consented to testing without the necessity of a finding of voluntariness.  Put simply, I would adopt the rationale of this Court's existing case law, which concludes that the decision to refuse to take an alcohol concentration test must be knowing and voluntary, and that voluntariness is not at issue where a driver takes an alcohol concentration test.[2]

---

[2]There is, of course, a difference between the issue of whether a driver who is stopped or detained on suspicion of driving or attempting to drive a motor vehicle while under the influence of alcohol has been properly advised of the driver's rights under the "Advice of Rights" form, previously labeled DR-15, and the issue of voluntariness as to refusal of testing.  The majority opinion appears to conflate the two.  It goes without saying that a driver who is stopped or detained on suspicion of driving or attempting to drive a motor vehicle while under the influence of alcohol is entitled to a proper advisement of rights pursuant to the Advice of Rights form, which was drafted by the Motor Vehicle Administration "[t]o assist law enforcement officers with making the advisements that TR

For the above reasons, respectfully, I concur. Chief Judge Barbera and Judge Adkins have authorized me to state that they join in this opinion.

---

§ 16-205.1(b)" and "advises detained drivers of certain consequences of either failing or refusing to take an alcohol concentration test." Motor Vehicle Admin. v. Seenath, 448 Md. 145, 172, 136 A.3d 885, 901 (2016). Indeed, it is through the proper advisement of rights that a law enforcement officer determines whether a driver refuses or consents to testing. Under TR § 16-205.1, with proper advisement of rights, consent is deemed.